UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:07-CV-52

ROBERT KATTULA, *et al.*                                                                      PLAINTIFFS

v.

AARON JADE, *et al.*                                                                           DEFENDANTS

**MEMORANDUM OPINION**

Defendants filed a Motion to Dismiss or Transfer this matter to the Eastern District of Michigan. (Docket # 8). Plaintiffs responded (Docket # 11), and Defendants filed a Reply. (Docket # 13). The Court now GRANTS in part Defendants' Motion to Dismiss or Transfer.

**BACKGROUND**

Plaintiffs originally filed this matter in this Court in the Western District of Kentucky based on federal question jurisdiction. The Plaintiffs bring suit regarding certain loan contracts granted to them by Defendants for the purchase, financing, and other matters related to properties in western Kentucky and Michigan. Four out of five of the Plaintiffs are Michigan residents. The last, US Environmental Management, LLC, was a Kentucky entity which has now been administratively dissolved. Four out of seven Defendants are Michigan residents. The remaining three Kentucky Defendants, Prime-Calvert, LLC, Calvert Properties, LLC, and Calvert Machinery, LLC, are managed by Michigan companies and consent to jurisdiction in Michigan. Most of the contracts at issue were negotiated and signed in Michigan. Most mandate the application of Michigan law, and some of the contracts contain forum selection clauses which require that litigation take place in Michigan courts.

Defendant Prime Financial is a lender who granted loans to Plaintiffs at a seventeen

percent interest rate.  In September, 2002, Plaintiff Luna Pier Truck Depot ("Luna") borrowed $1.25 million in a mortgage to purchase property in Michigan (the "Luna property").  Around the same time, Plaintiff K & B, owned and managed by Plaintiffs Robert and Maria Kattula, borrowed money to finance the purchase of notes for LWD.  K & B eventually purchased LWD's assets, as well as assets for General Environmental Services, through a bankruptcy auction using these notes as partial payment, and sold most of the auctioned properties to a company named Waste Path.  In 2004, K & B borrowed $600,000 and Waste Path borrowed around three million dollars to finance improvements to the properties K & B acquired in the LWD auction.  Because the Plaintiffs were working together in these purchases, the loans from Prime Financial were cross-collateralized.  In other words, the Luna property served as collateral for not only the mortgage on that property, but for other loans made to Plaintiffs.

The mortgage on the Luna property was paid in full in late 2005, but Prime Financial retained its security interest in the Luna property since it served as collateral for other loans.  The Plaintiffs found difficulty repaying the other loans, and Prime Financial allowed them to restructure the repayment on November 16, 2005.  The Plaintiffs' burden of repayment would be lessened by transferring from some of the property to Prime Financial.  Prime Financial had previously gained voting control of Waste Path, but now also had a fifty percent interest in most of the property purchased from the LWD bankruptcy auction.

The parties disagree about the content of the Restructuring Agreement.  Defendants allege that the Restructuring Agreement was not memorialized in one document, but instead consists of several agreements and additional terms set forth in negotiations.  Plaintiffs suggest that the Restructuring Agreement was set partially forth in a document entitled Memorandum of Understanding, drafted in Kentucky by Peter M. Schneiderman, a Michigan resident and

attorney for Prime Financial. Defendants present the affidavit of another attorney, Michelle Levy, who claims she drafted the Memorandum in Michigan, not Kentucky. It is clear, however, that Schneiderman was present in Kentucky for the signing of the document and to negotiate some transfer of Waste Path assets.[1] The Memorandum states that its purpose is to divide the sharing arrangement for the business of Waste Path between Prime Financial, Calvert Properties, and Robert Kattula ("Kattula"). The agreement does not set forth any terms which would govern the mortgage of the Luna property specifically, but does state that Prime Financial was to be paid for Kattula's outstanding notes from the profits of Waste Path. The Memorandum was signed by both Aaron Jade ("Jade"), manager of Prime Financial, and Kattula. Plaintiffs argue that the Memorandum was signed in Kentucky.

According to Plaintiffs, the Restructuring Agreement, an amalgam of other agreements, functions to structure the Plaintiffs' payoff of the several debts to Prime Financial. Plaintiffs state that the parties agreed that Prime Financial would acquire a fifty percent interest in Waste Path landfill, a Kentucky property, and in exchange would put the profit toward the amortization of Kattula's debt and would terminate the Luna Pier mortgage which, though paid, was held as collateral for other loans.

In addition to claims against the Defendants for breach of contract, breach of fiduciary duty, and tortious interference with Plaintiff's contract, Plaintiffs state claims under the RICO Act. Because of Defendants' alleged business activities in Kentucky, Plaintiffs claim that the Court should exercise general jurisdiction over them in the enforcement of the contracts. In the alternative, Plaintiffs claim that the mere allegation of RICO claims should allow the Court to take jurisdiction over the Defendants regardless of their connection with Kentucky. Defendants

---

[1] This transfer did not directly involve the Plaintiffs.

deny that the Court has jurisdiction and claim that any connections to Kentucky are few and too attenuated to confer jurisdiction to this Court. Because of these isolated contacts with Kentucky and the pervasiveness of Michigan connections and the required application of Michigan law to some issues in this matter, Defendants urge that this Court either dismiss the case or transfer it to the Eastern District of Michigan.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)). Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v. Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir. 2002). A "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104 F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)).

# ANALYSIS

**I.        Personal Jurisdiction over Defendants under the RICO Act**

"When a federal statute provides for nationwide service of process, it becomes a statutory basis for personal jurisdiction." *Jude v. First Nat'l Bank of Williamson*, 259 F.Supp.2d 586, 592 (E.D. Ky. 2003) (citing *Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 824 (6th Cir. 1981)). The RICO Act contains a specific provision for national service of process. 18 U.S.C. § 1965(d). RICO allows nationwide service of process even over defendants with no contacts to the forum "when it is shown that the ends of justice require it" so long as appropriate national contacts exist. *Iron Workers Local Union No. 17 Ins. Fund v. Phillip Morris, Inc.*, 23 F. Supp.2d 796, 803 (N.D. Ohio 1996). If nationwide service of process applies, the Plaintiffs need only show that the Defendants maintained minimum contacts with the United States as a whole, not just within Kentucky. *Id.* The purpose of this section of RICO is to allow the provide court a means to "bring all members of a nationwide RICO conspiracy before the court in a single trial" *Id.* (quoting *LaSalle Nat'l Bank v. Arroyo Office Plaza, Ltd.*, 1988 U.S. Dist. LEXIS 2025, No. 87-C-463 at *3 (N.D. Ill. Mar. 10, 1988)).

This loophole only applies, however, when the court has "personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff... show[s] that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators." *Id.* at n.16 (quoting *Butchers Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986)). Courts also do not uniformly apply this nationwide service of process to all RICO cases and would not "prevent plaintiffs from pursuing separate suits against nonresident RICO defendants who did not participate in the single racketeering

enterprise. Thus merely naming persons in a RICO complaint does not, in itself, make them subject to section 1965(b)'s nationwide service provision." *Id.*

Plaintiffs bear the burden of showing that the ends of justice require the exercise of nationwide service of process for personal jurisdiction purposes. *See Southmark Prime Plus, L.P. v. Falzone*, 768 F. Supp. 487, 490 (D. Del. 1991). In fact, courts have declined to exercise personal jurisdiction under the nationwide service of process available for RICO claims "if there is a district where venue is proper as to every RICO defendant, without resort to 1965(b)." *Id. See also Anchor Glass Container Corp. v. Stand Energy Corp*, 711 F.Supp. 325, 331 (S.D. Miss. 1989). Because the Defendants stipulate that all consent to Michigan jurisdiction, the Eastern District of Michigan would be a proper venue for all Defendants under the Michigan long arm statute. Therefore, Plaintiffs cannot show that it is necessary for this Court to utilize section 1965(b) to serve "the ends of justice." Because the Court declines to find personal jurisdiction based on nationwide contacts in this matter, the Court continues analysis under the long arm statute of Kentucky.

## II.     Personal Jurisdiction under the Long Arm Statute

Defendants move to dismiss this action because they claim that this Court lacks personal jurisdiction over the Defendants. The Plaintiffs bear the burden of showing that personal jurisdiction exists. *See Jude v. First Nat'l Bank of Williamson*, 259 F.Supp.2d 586 (E.D. Ky. 2003). However, that burden is "relatively slight, and the pleadings and affidavits will be construed in a light most favorable to the plaintiff." *Info-Med, Inc. v. Nat'l Healthcare, Inc.*, 669 F. Supp. at 795 (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439-40 (6th Cir. 1980)).

Under the Kentucky long arm statute, this Court may extend personal jurisdiction to all

defendants, so long as personal jurisdiction is consistent with the federal requirements of due process. *See* Ky. Rev. Stat. § 454.210. Federal due process requires that the Defendants have certain "minimum contacts" with the state of Kentucky before a court can assert jurisdiction. *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). Under Kentucky law, the "minimum contacts" requirement has been applied through a tripartite test. The Court must ask "(1) has the defendant purposely availed itself of the privilege of acting within this Commonwealth; (2) did the cause of action arise from the defendant's activity; and (3) does there exist a substantial enough connection to the Commonwealth to make jurisdiction over the defendant reasonable?" *Franklin Roofing, Inc. v. Eagle Roofing*, 61 S.W.3d 239, 241 (Ky. App. 2001) (citing *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405-06 (Ky. Ct. App. 1984)); *see also S. Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

If the Plaintiffs can prove that jurisdiction over the Defendants comports with due process, only further evidence that each Defendant "transacts any business" in Kentucky is needed for specific jurisdiction. Ky. Rev. Stat. 454.210. *See also Lanier v. Am. Bd. of Edodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (citing *Sifers v. Horen*, 188 N.W.2d 623 n.2 (1971)) (holding that, under an identical long arm statute in Michigan, *even the slightest amount of business* is sufficient to confer specific jurisdiction). This Court has noted that business may take place in a state even without physical presence of the Defendant. *InfoMed*, 669 F.Supp. at 796 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 476 (1985)). *But see Calphalon Corp. v. Rowlette*, 228 F.3d 718 (6th Cir. 2000) (holding that an employee of a company, who did no work in Ohio but negotiated his employment contracts over the phone with an Ohio office of the employer, did not have sufficient contacts with Ohio to be haled into the state for litigation); *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997) (holding that receipt

of packages from a Michigan office, correspondence with a Michigan office, the visit of a representative to a Michigan office, and telephone calls to a Michigan office were insufficient to create personal jurisdiction in Michigan).

A Court may exercise general jurisdiction over a defendant where he has "continuous and systematic" contacts with the state of Kentucky. *Third Nat'l Bank in Nashville v. Wedge Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989); *see also Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). Where a nonresident "carries on substantial and more or less continuous business within a state it should reasonably expect to be required to defend actions in the courts of that state." *Handley v. Indiana & Michigan Elec. Co.*, 732 F.2d 1265, 1272 (6th Cir. 1984). However, the burden to establish general jurisdiction is quite high and generally requires the existence of "an office in the forum state" or other physical presence. *Amoco Egypt Oil Co. v. Leonis Navigation Co.*, 1 F.3d 848, 851 n.3 (9th Cir. 1993). Merely contracting with or visiting the state for isolated transactions is insufficient to confer general jurisdiction. *See, e.g., Helicopteros*, 466 U.S. at 415-17; *Nationwide Ins. Co. v. Tryg Int'l Ins. Co., Ltd.*, 91 F.3d 790, 794 (6th Cir. 1996).

A.    **Personal Jurisdiction over Prime Financial**

1.    **Specific Jurisdiction**

***Defendants contend that this Court should decline personal jurisdiction over Prime*** Financial because Prime Financial's only connection to Kentucky is that it loaned money to a Michigan plaintiff in Michigan for the purpose of purchasing Kentucky land. Under Kentucky law, a "foreign lending institution... shall not be considered to be doing, transacting, or carrying on business in [Kentucky] solely by reason of engaging in... the lending of money... secured in

whole or in part by mortgages, deeds of trust or other forms of security on real or personal property in [Kentucky] if such activities are carried on from outside this state by the lending institution...." Ky. Rev. Stat. § 286.2-670.  *See also Jude*, 259 F.Supp.2d at 591 (holding that a foreign lender had not transacted business for the purposes of the Kentucky long arm statute when it lent money out of state for the purchase and improvement of land in Kentucky.  The Court, however, ultimately held that personal jurisdiction was proper based on the defendant's regular and continuous business connections in Kentucky.)

Defendants also note that Prime Financial's ownership interest in the Kentucky corporate defendants does not by itself constitute a proper basis for personal jurisdiction.  "The mere ownership by a corporation of all the stock of a subsidiary amenable to the jurisdiction of a state's courts does not in itself subject the parent to the jurisdiction of such courts."  *Miller v. Trans World Airlines*, *Inc.,* 302 F.Supp. 174, 178 (E.D. Ky. 1969) (citing *Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925)).  In order to exert personal jurisdiction over the parent for the actions of the subsidiary, the Plaintiffs must plead and prove that "the corporate separateness is fictitious, that the parent has held the subsidiary out as its agent, or that the parent has exercised an undue degree of control over the subsidiary."  *Id.*  Plaintiffs have made no such allegations here.  Because Plaintiffs do not allege any further connections of Prime Financial to Kentucky, they cannot show that Prime Financial "transacted business" in Kentucky sufficient to hale it into Kentucky courts by way of specific personal jurisdiction.

**2.      General Jurisdiction**

Plaintiffs contend that the Court has general jurisdiction over Prime Financial because it owns property in Kentucky, the ownership of which is at issue in this case.  Furthermore,

Plaintiffs notes that the RICO claims and breach of fiduciary duty claims against Prime Financial relate to its fraudulent conduct within the state and constitute a continuous connection with Kentucky. *See* Ky. Rev. Stat. § 454.210 (2)(a)(3) and Ky. Rev. Stat. § 454.210 (2)(a)(4). Plaintiffs cite Schneiderman's visit to Kentucky on behalf of Prime Financial as another connection warranting general personal jurisdiction. Lastly, because the Restructuring Agreement was allegedly negotiated in Kentucky, memorialized in part by a Memorandum of Understanding signed in Kentucky, intended to be performed in Kentucky, and breached in Kentucky, Plaintiffs allege the Court may exercise general jurisdiction over Prime Financial. Ky. Rev. Stat. 454.210 (2)(a)(1).

The Court finds, however, that these connections alleged by Plaintiff are altogether insufficient to confer general jurisdiction over Prime Financial. Prime Financial remains a Michigan lender who lent Plaintiffs money to purchase Michigan lands. Prime Financial did accept payment for the loan in the form of voting rights and profits in Waste Path, a Kentucky property, but does not continuously manage Waste Path. Prime Financial's connections with Kentucky are not "continuous and systematic" but are isolated, and stem solely from its transactions acquiring payment for its Michigan loans. Therefore, the Court declines to confer personal jurisdiction over Prime Financial.

### B.   Personal Jurisdiction over Jade

While Defendants state that Jade was not a party to any of the six agreements that Plaintiffs seek for this Court to interpret, nor any of the twenty-one agreements related to this matter, Jade did sign the Memorandum of Understanding dated November 16, 2005. Plaintiffs do not allege that he personally traveled to Kentucky or transacted any business on behalf of himself in

Kentucky, only that he signed the Memorandum of Understanding on behalf of Prime Financial. Plaintiffs do not urge that the Court should pierce the corporate veil to impose liability on Jade.

Plaintiffs assert that the Court has general jurisdiction over Jade because of his "continuous and systematic" contacts with the state of Kentucky. *Third Nat'l Bank in Nashville*, 882 F.2d at 1089. Here, Plaintiffs allege that Jade is the manager of at least three Kentucky limited liability companies: Prime-Calvert, LLC; Calvert Machinery, LLC; and Calvert Properties, LLC. Plaintiffs also allege in an affidavit that Jade visits Kentucky numerous times in connection with the business activities of the limited liability companies he manages. Defendants, however, claim that Jade conducted no business in Kentucky during that time, aside from arranging that Prime Financial should receive collateral, in satisfaction of loans regarding Michigan transactions, from a Kentucky landfill which it did not actively manage.

Lastly, Plaintiffs allege that the Court has jurisdiction over Jade because of Calvert Properties' agreement, through Jade, to provide services in Kentucky to a Kentucky limited liability company. According to Plaintiffs, this single connection, working on behalf of a company, confers jurisdiction. Ky. Rev. Stat. § 454.210 (2)(a)(1). Lastly, Plaintiffs contend that because the claims of breach of fiduciary duty and claims under RICO relate to business in Kentucky, Jade is subject to personal jurisdiction. Ky. Rev. Stat. § 454.210 (2)(a)(3) and Ky. Rev. Stat. § 454.210 (2)(a)(4).

This Court declines to rule on whether Jade is subject to personal jurisdiction in Kentucky. Taking Plaintiff's allegations as true, Jade has continuous contact with Kentucky through his frequent business visits and management of Kentucky companies. However, a finding of personal jurisdiction is unnecessary here, as transfer is proper. *See infra.*

C.  **Personal Jurisdiction over Schneiderman**

1.  **Specific Jurisdiction**

Schneiderman is not personally a party to any contracts with Plaintiffs. However, he did travel to Kentucky as a representative of Prime Financial and Calvert Properties to finalize an agreement transferring interests in Waste Path to Calvert Properties in November, 2005. Plaintiffs allege that, during this trip, Schneiderman drafted, negotiated, and oversaw the execution of the Restructuring Agreement on behalf of Prime Financial. While Defendants deny Schneiderman's involvement in the drafting and negotiation of the Restructuring Agreement and the Memorandum of Understanding, in this Motion to Dismiss, the Court must take all Plaintiffs' allegations as true.

Plaintiffs also make claims against Schneiderman in relation to an escrow agreement signed on May 15, 2006, with Kattula. The Plaintiffs claim that Schneiderman breached fiduciary duties to Kattula incurred under that agreement by failing to remit consulting fees related to the agreement. However, the terms of the agreement itself bar this court's jurisdiction. In paragraph nine, the agreement states that it "shall be governed by the laws of the State of Michigan. All parties agree that venue shall be in the Oakland County Circuit Court, State of Michigan or the U.S. District Court for the Eastern District, State of Michigan." Forum-selection clauses are *prima facie* valid and shall be enforced unless enforcement is shown by the resisting party to be "unreasonable" under the circumstances. *M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10 (1972); *Prezocki v. Bullock Garages, Inc.*, 938 S.W.2d 888 (Ky. 1997); *Prudential Resources Corp. v. Plunkett*, 583 S.W.2d 97 (Ky. App. 1979). A court may determine whether the forum selection clause is unreasonable based on the inconvenience created by conducting the proceedings in the specified forum, the disparity of bargaining power

12

between the parties, and whether the state in which the claim was brought had a significant interest in the outcome. Plaintiff's do not persuade this Court to overturn the forum-selection clause, and the Court declines to take personal jurisdiction over Schneiderman on the basis of that agreement.

It is clear that, if Schneiderman negotiated the Restructuring Agreement and Memorandum of Understanding, as alleged by Plaintiffs, that he did act within Kentucky and that Plaintiffs' claims against his arise from those actions. The Court need not rule, however, if it is reasonable to impose specific jurisdiction on Schneiderman on the basis of these activities on behalf of Prime Financial, because transfer of this action to the Eastern District of Michigan is proper. *See infra.*

**2.      General Jurisdiction**

Plaintiffs allege that they have general jurisdiction over Schneiderman because of his visits to Kentucky on behalf of Prime Financial. They claim he has sent correspondence into Kentucky to do business with a Kentucky entity, in connection with the claims against him under the RICO Act and his fraudulent activities. Because he sent demand letters to Kentucky and visited Kentucky once on behalf of his client, Plaintiffs contend that Schneiderman could anticipate being haled into Court in Kentucky to account for his alleged misconduct. The Court declines to grant general jurisdiction over Schneiderman based on these activities. They are isolated to the Waste Path and Restructuring Agreement transactions and are not continuous or systematic enough to hale Schneiderman into court on the grounds of general jurisdiction.

**III.      Transfer of the Case to the Eastern District of Michigan**

Defendants also move for the case to be transferred to a different venue, the Eastern District of Michigan. The Defendants claim that transfer is proper because the only connection to Kentucky courts is the land subject to the mortgage. Many of the events leading to the contracts underlying this lawsuit arose in Michigan. Even the Kentucky entities involved in this action are alleged to be residents of Michigan in the Complaint. The majority of the agreements relative to this action expressly indicate that they were executed in Michigan, between Michigan residents. Plaintiffs are suing for rights regarding Luna Pier, a Michigan property. Eighteen of the relevant twenty-one agreements specify that Michigan law governs. Six out of the seven agreements before this court for interpretation specify the application of Michigan law. Courts favor adjudication of state law claims by a court that sits in the state whose substantive laws will govern the case. *Leroy v. Great W. United Corp.* 443 U.S. 173 (1979); *Am. Louisiana Pipeline Co. v. Gulf Oil Corp.*, 158 F.Supp. 13 (E.D. Mich. 1957). Because parties, evidence, and witnesses are all in Michigan, Defendants urge that transfer to Michigan courts is proper.

Plaintiffs counter that the Court for the Eastern District of Michigan would not have jurisdiction over this matter because the alleged breach of the contract occurred in Kentucky and involved obligations relating to a Kentucky landfill. Furthermore, Plaintiff alleges that the fraudulent activity leading to RICO claims occurred primarily in Kentucky. Additionally, Plaintiff argues that a Michigan court would be unable to exercise jurisdiction over Kentucky limited liability companies Prime-Calvert, Calvert Properties, and Calvert Machineries because they are not Michigan corporations, do not carry on continuous and systematic contacts with Michigan, and do not consent to jurisdiction in Michigan. *See* Mich. Comp. Laws § 600.711. However, in this case, the Kentucky Defendants *have* consented to personal jurisdiction in the

Eastern District of Michigan.

A federal court is empowered to transfer a case to a more appropriate federal forum under 29 U.S.C. § 1404. In determining whether transfer is proper, the Court must analyze (1) whether the action "might have been brought" in the proposed transferee forum and (2) whether the transfer promotes convenience and justice. *Rutherford v. Goodyear Tire & Rubber Co.*, 943 F.Supp. 789, 791 (W.D. Ky. 1996). A district court may transfer any action to any other district or division where it might have been brought "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge FBL-585*, 364 U.S. 19, 26 (1960)). Relevant factors include (1) the convenience of witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based upon the totality of the circumstances. *See, e.g., Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Racing, Inc.*, 406 F.Supp.2d 751 (E.D. Ky. 2005) (quoting *Viron Int'l Co. v. David Boland, Inc.*, 237 F.Supp. 2d 812, 816 (W.D. Mich. 2002)); *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp.2d 181, 185 (E.D.N.Y. 2003).

Plaintiffs note that many of the witnesses they would call are employees of the Kentucky limited liability companies defending this action and are residents of Kentucky. Plaintiffs also state that they intend to call witnesses from the employees of the Kentucky landfill related to this case. Plaintiffs posit that these witnesses could not be compelled to testify in Michigan. However, Defendants point out that four out of five of the named Plaintiffs and four out of seven

of the named Defendants remain Michigan citizens. By similar logic, many witnesses will be required from Michigan, as well as Kentucky. Because of the presence of so many relevant parties in Michigan, this factor weighs in favor of transfer.

Plaintiff also contends that the evidence relevant to this case is primarily in Kentucky. The relevant documents have been submitted to the courts for the Western District of Kentucky in other actions related to the bankruptcy of K&B Capital, a case tried in the Bankruptcy Court for the Western District of Kentucky and appealed in this Court. Other documents may be located in Kentucky locations of the Kentucky limited liability defendants. Because of this, and the proximity of witnesses, Plaintiffs contend that Kentucky would also be the most convenient forum. However, evidence related to the foreclosure proceedings Plaintiffs seek to enjoin lies solely in Michigan, as does much of the evidence relative to the execution of relevant agreements in this case. Additionally, notaries, CPA's, and lawyers who worked on the majority of the agreements signed by the parties relative to this matter are located in Michigan. Thus, this factor weighs slightly in favor of transfer to Michigan.

Plaintiffs also argue that the locus of relevant facts is in Kentucky, where the Restructuring Agreement was allegedly negotiated and where terms of it were allegedly breached. However, as Defendants point out, the land at the crux of this matter, which Plaintiff seeks to enjoin the foreclosure of, is located in Michigan. While some relevant facts may have occurred in Kentucky, many relevant actions also occurred in Michigan, including numerous contracts related to this matter. The parties' intent to center their negotiations and business in Michigan is reflected in the numerous contracts between the parties specifying Michigan law as

governing the parties' relationships and mandating Michigan as a forum for related litigation. This factor also weighs in favor of transfer.

It is clear that Michigan law would apply to some aspects of this case. Plaintiffs concede this repeatedly in their Complaint. Plaintiff urges the application of Kentucky law to the Restructure Agreement, or at least the portions of it that are not in other documents mandating the use of Michigan law. While Kentucky law might apply to some aspects of this matter as well, the forum familiarity with governing law factor tips in favor of transfer.

The Plaintiffs' choice of forum is also relevant. As a general rule, unless the balance of convenience is strongly in favor of the defendant, the plaintiff's choice of forum is often preserved. *Rutherford*, 943 F. Supp. 789, 791 (W.D. Ky. 1996) (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 505 (1947)). While the Court should give certain weight to the Plaintiffs' choice of forum, that factor is afforded less weight if the chosen forum is not the state of the Plaintiffs' residence. *Central States Welfare Fund v. Guaranty Trust Life Ins. Co.*, 8 F.Supp.2d 1008, 1010-11 (N.D. Ohio 1998). Here, all plaintiffs are residents of Michigan, except the now dissolved entity US Environmental, LLC. While Defendants urge that the residence of US Environmental should not be considered because it is dissolved, Plaintiffs contend that the residency is still relevant because this case is part of US Environmental's wind-up affairs. Regardless, this factor weighs against transfer of this case.

Plaintiffs also urge this Court to retain jurisdiction because some Defendants are not amenable to suit in Michigan. Because of this, Plaintiffs make it clear they would pursue actions in both forums if the Court were to allow transfer. The conduct of identical litigation in two

17

courts would likely be inefficient and the possibility of conflicting outcomes is not in the interests of justice. However, all Defendants consent to jurisdiction in Michigan. Thus, Plaintiffs would not be inconvenienced by two suits. A transfer to Michigan courts would instead consolidate this action in a forum with jurisdiction over all the Defendants, and avoid conflicting outcomes and duplicative litigation.

While some of the relevant agreements include a forum selection clause requiring litigation in Michigan, the agreements this Court must interpret do not include a forum selection clause. The presence of such a clause in a related agreement is "not determinative, but merely one factor to be thrown into the balance with other § 1404 factors." *Kentucky Speedway*, 406 F.Supp.2d at 751 (citing *Kerobo v. Sw. Clean Fuels Corp*, 285 F.3d 531, 538 (6th Cir. 2002)). In this case, it weighs in favor of transfer of this matter to the Eastern District of Michigan.

## CONCLUSION

The Court now GRANTS Defendants' Motion to Transfer this matter to the Eastern District of Michigan. An appropriate Order shall follow.